UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

JO ANN KURZ

    Plaintiff,

v.

COLLEEN ZAHN,

    Defendant.

Case No. 1:11-cv-00342-EJL-MHW

**REPORT AND RECOMMENDATION ON APPLICATION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND INITIAL REVIEW ORDER**

Pending before the Court is Plaintiff Jo Ann Kurz's Application for Leave to Proceed in forma pauperis (Dkt.1). Plaintiff's complaint (Dkt. 2) was conditionally filed on July 27, 2011 due to her request for in forma pauperis status. On October 28, 2011 this case was referred to the undersigned United States Magistrate Judge for all matters. (Dkt. 10). Therefore, the Court now reviews the record to determine whether summary dismissal is appropriate. Having reviewed the record and the complaint and being otherwise fully informed, the Court hereby makes the following Report and Recommendation.

## BACKGROUND

This lawsuit arises from Plaintiff's employment as General Manager at the Boise Racquet and Swim Club. Plaintiff worked at the Club from 1994 until October 20, 2008, when she was terminated from her employment. (Dkt. 2, p. 1). According to the Complaint, the termination resulted from an issue that arose with respect to another employee, referred

to as "J.D.," whom the club had discovered to be a non-violent sex offender. *Id.* Kurz alleges that when J.D.'s background was discovered, she asked Club President Vivian Klein for permission to consult attorney Colleen Zahn for advice on whether the Club should retain J.D. as an employee. Kurz alleges that on September 29, 2008, she, Klein, and Zahn had a telephone conversation in which Zahn advised that the Club "could go either way" with respect to keeping or terminating J.D. *Id.* Although the Complaint does not make the sequence of events after this point entirely clear, on October 20, 2008, Kurz was informed by Club management that the Club was terminating her employment. *Id.* Kurz alleges that the termination resulted at least in part from decisions she had made with respect to J.D. *Id.* at p. 1-2. The crux of her complaint is that during the September 29, 2008 phone conversation about J.D., Zahn failed to explain to her that she represented the Club, and not Kurz personally, pursuant to *Upjohn v. United States,* 449 U.S. 383, 101 S.Ct. 667 (1981). Kurz also asserts that Zahn blocked evidence that Kurz needed to use to prove discrimination in proceedings before the Idaho Human Rights Commission. *Id.* Kurz is now seeking to bring claims for negligence, malpractice, defamation, slander and libel against Zahn.[1] *Id.* at p. 3.

---

[1] As an initial matter, the Court notes that Kurz has incorrectly identified the basis of this Court's jurisdiction as being federal question jurisdiction arising under 28 U.S.C. § 1331. Despite her reliance upon *Upjohn* and other federal cases, however, her claims for negligence, malpractice, defamation, slander, and libel, are all tort claims arising under state law. Nevertheless, it appears that diversity jurisdiction exists under 28 U.S.C. § 1332(a)(1), because Kurz is a citizen of Washington and Zahn a citizen of Idaho, and because the amount in controversy exceeds $75,000. (Dkt. 1, Attachment 1).

**REPORT AND RECOMMENDATION ON APPLICATION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND INITIAL REVIEW ORDER, PAGE 2**

## LEGAL STANDARDS

Pursuant to federal statute, "any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, . . . without prepayment of fees or security therefor." 28 U.S.C. § 1915(a)(1). The statute governing in forma pauperis complaints further provides that:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that–
>
>   (A) the allegation of poverty is untrue; or
>
>   (B) the action or appeal–
>     (i) is frivolous or malicious;
>     (ii) fails to state a claim on which relief may be granted; or
>     (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

## DISCUSSION

**A.    Request for In Forma Pauperis Status**

In order to qualify for in forma pauperis status under 28 U.S.C. § 1915(a)(1), Plaintiff must submit an affidavit that includes a statement of all assets she possesses and that states she is unable to pay the fee required. *Id.* An affidavit is sufficient if it states the plaintiff, because of her poverty, cannot "pay or give security for the costs" and still be able to provide himself and dependants "with necessities of life." *Adkins v. E.I. DuPont de Numours & Co.*,

335 U.S. 331, 339 (1948). Though a plaintiff need not demonstrate absolute destitution in order to meet the requirements of the statute, the affidavit must "state the facts as to affiant's poverty with some particularity, definiteness and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (internal quotation omitted).

In determining whether a plaintiff's income level meets the poverty threshold for purposes of an application for in forma pauperis status, many courts look to the federal poverty guidelines developed annually by the Department of Health and Human Services ("HHS"). The poverty guidelines depend on the size of a household; for a household of one person, for 2012, the federal poverty threshold applicable to the 48 contiguous states is $11,170. *See,* 2012 HHS Poverty Guidelines, http://aspe.hhs.gov/12poverty.shtm. The Plaintiff's affidavit does not identify any other members of her household requiring support or otherwise identify any dependents, so the Court assumes that she is the sole member of her household.

Kurz's application for in forma pauperis status demonstrates that she has substantial income and assets far in excess of the 2012 federal guidelines. She references income from a job as a Consumer Safety Technician totaling $3,100 per month, with a bi-weekly net pay is $1,134. (Dkt 1, p.2). In addition to this income from her job, she also states that in the past twelve months, she received $8,300 in rental income and $7,800 in unemployment benefits. (Dkt. 1, p. 3). Even if the Court considers only the net pay from her employment, rather than the gross, added together, the Plaintiff's annual income from all sources would amount to

$43,316. Though Plaintiff also has substantial obligations, totaling $3,033 per month, or $36,396 per year, these expenses, calculated on an annualized basis, are significantly less than her income. (Dkt. 1, p. 5). Nor can all the items included on her list of monthly obligations, even generously construed, be considered as the "necessaries of life." For instance, Plaintiff lists include both a monthly rental payment of $665 as well as an $895 mortgage payment. (Dkt. 1, p. 5). She also lists two significant assets–namely a house worth $130,00 and a car worth approximately $6,000. (Dkt. 1, p. 4). Although Plaintiff does carry significant debt–namely $21,000 in credit card debt and $93,000 in "parent student loans," it nonetheless appears that considering all sources of income, she would be able to meet her monthly obligations on these debts, pay Court fees, and still provide for herself. Ms. Kurz's has therefore failed to demonstrate facts that support her claim of indigence. The Request to Proceed in Forma Pauperis is therefore subject to dismissal under 28 U.S.C. § 1915(e)(2)(A).

**B.    Failure to State a Claim**

In the event the District Court should disagree with the above analysis, the Court also finds that the Plaintiff's claims would also be subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii), either because they are time barred, because they fail to state a claim upon which relief can be granted, or because they seek relief from a defendant who is immune.

### 1. Legal Malpractice Claims

Kurz alleges several claims against Zahn, the first of which is a claim she characterizes as a "violation of federal precedent," based upon Zahn's alleged failure to provide *Upjohn* warnings that would have clarified that she did not represent Kurz personally. However, a violation of *Upjohn* or similar state Rules of Professional Conduct governing lawyers does not, in and of itself, give rise to tort liability. *See, e.g. Stephen v. Sallaz & Gatewood, Chtd.,* 150 Idaho 521, 526, 248 P.3d 1256, 1261 (2011); *High Valley Concrete, LLC v. Sargent,* 149 Idaho 423, 430, 234 P.3d 747, 754 (2010). Idaho courts have repeatedly affirmed that, except in very narrow circumstances not present here, "a direct attorney-client relationship is required to exist between the plaintiff and the attorney-defendant in a legal malpractice case." *See, Taylor v. McNichols,* 149 Idaho 826, 845, 243 P.3d 642, 661 (2010); *Taylor v. Maile,* 142 Idaho 253, 127 P.3d 156 (2005); *Harrigfeld v. Hancock,* 140 Idaho 134, 90 P.3d 884 (2010). Therefore, unless she were able to establish that she actually did have an attorney-client relationship with Zahn, Plaintiff's claim that Zahn failed to give her "Upjohn" warnings would not be legally cognizable.

Kurz's complaint does not allege that she actually had an attorney-client relationship with Zahn, but it does suggests that she may have believed that she had one. For example, she states, "The reason I called Zahn *was for information to protect the club and myself.* I was not aware that the club and I were possibly not in alignment or there was a potential

**REPORT AND RECOMMENDATION ON APPLICATION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND INITIAL REVIEW ORDER, PAGE 6**

conflict. Surely with an UpJohn [sic] warning, my guard would have been up." (Dkt. 2, p. 2) (emphasis added). In a telephonic hearing before the Idaho State Bar, Kurz reiterated that she felt that she was "protected" by virtue of her conversations with Zahn.² *Id.*

Ordinarily, the Court would allow Plaintiff an opportunity to amend her complaint to clarify whether she actually had an attorney-client relationship with Zahn, and to explain the circumstances that gave rise to that relationship. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (holding that pro se complaints must be liberally construed and given the benefit of any doubt); *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (if it appears that a complaint could be saved by an amendment, plaintiff should be notified of deficiencies and provided an opportunity to amend). In this case, however, the Court finds that allowing an amendment would be futile. Even assuming that an attorney-client relationship existed, it is apparent from the face of the complaint that any claim for legal malpractice would be time-barred. *See Tate v. U.S.* 13 Fed.Appx. 726 (9th Cir. 2001) (holding that dismissal of an in forma pauperis complaint was proper where running of the statute of limitations was

---

²It is not clear from the pleadings why Kurz believes Zahn should have administered an *Upjohn* warning on September 29, 2008, or upon what basis she believes that Zahn represented her personally. The Idaho Rules of Professional Conduct require that an attorney representing an organization clarify that she represents the organization, not the individual employee, if it becomes clear that the individual employee's interests are adverse to that of the corporation. *See,* Idaho Rule of Professional Conduct 1.13(f). However, from the information provided, it is difficult to determine why Zahn should have realized that Kurz's interests were adverse on September 29, 2008, given that Kurz initiated the contact herself, given that the Club President was also present during the conversation, and especially given that, by her own admission, Kurz was not herself aware that she and the Club were "not in alignment" at that time. Though the Court is not dismissing the case on this basis, it does note that Kurz would likely face significant hurdles in proving negligence even if her claims were not time-barred.

**REPORT AND RECOMMENDATION ON APPLICATION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND INITIAL REVIEW ORDER, PAGE 7**

apparent on the face of the pleadings); *See also, Franklin v. Murphy,* 745 F.2d 1221, 1228-29 (9th Cir. 1984).

In Idaho, the statute of limitations on a claim for legal malpractice is two years. I.C. § 5-219(4). Plaintiff alleges that the conversation between her, Zahn, and Vivian Klein about whether the Club should keep or retain J.D. occurred on September 29, 2008. The Board elected to terminate Kurz on October 16, 2008, and she was informed of this decision on October 20, 2008. Kurz's complaint is clear that she believed that Zahn's failure to provide her with *Upjohn* warnings on September 29, 2008 was a negligent omission that led to her termination. Idaho courts have always held that a claim for professional malpractice is ripe when the plaintiff incurs some damage that is objectively ascertainable. *See, e.g., Stuard v. Jorgenson,* 150 Idaho 701, 249 P.3d 1156 (2011); *City of McCall v. Buxton,* 146 Idaho 656, 201 P.3d 629 (2009); *Parsons Packing, Inc., v. Masingill,* 140 Idaho 480, 95 P.3d 631 (2004); *Lapham v. Stewart,* 137 Idaho 582, 586-88, 51 P.3d 396, 400-402 (2002); *Fairway Development Co., v. Petersen, Moss, Olsen, Meacham & Carr,* 124 Idaho 866, 865 P.2d 957 (1993). Termination from one's employment constitutes damage; therefore, the two-year statute of limitations on the legal malpractice claim began to run no later than October 20, 2008, the date that Kurz was informed of her termination. The statute would have expired on October 20, 2010, nearly nine months before Kurz filed the present complaint in this Court.

Additionally, Idaho does not recognize the doctrine of "continuing tort" as a basis for

extending a statute of limitations. Rather, its courts have consistently held that once a plaintiff incurs some damage, subsequent acts of negligence do not toll the statute of limitations. *See, e.g. Fairway Development Co.,* 124 Idaho at 870, 865 P.2d at 961; *Pichon v. Benjamin,* 108 Idaho 852, 702 P.2d 890 (Ct. App. 1985). Thus, Kurz's claim that Zahn continued to engage in negligent acts on undisclosed dates in 2009 when she allegedly blocked evidence before the Idaho Human Rights Commission do not operate to extend the limitations period.

Finally, neither the discrimination charge that was filed with the Idaho Human Rights Commission against Kurz's employer, nor the complaint that was apparently filed with the Idaho State Bar against Zahn herself would serve to toll the statute on the legal malpractice claim. The mere hope that a loss may eventually be recovered from another party does not toll the statute of limitations. *See, Lapham,* 137 Idaho 582, 587, 51 P.3d 396, 400 (2002). Further, in the absence of a statutory scheme specifically requiring a plaintiff to pursue administrative remedies and providing for tolling while such remedies are pursued, the mere fact that a plaintiff might choose to bring an administrative complaint does not extend the time for filing a lawsuit in court. *See, e.g. Wilhelm v. Frampton*, 144 Idaho 147, 149, 158 P.3d 310, 312 (2007) (holding that statute of limitations on an action against an attorney to recover an allegedly excessive fee was not tolled by non-binding fee arbitration proceedings in front of the Idaho State Bar); *In re McCann's Estate,* 94 Idaho 386, 488 P.2d 357 (1971) (holding that the state tax commission's attempt to force an executor of an estate to post a

bond for inheritance tax due did *not* toll the five-year statute of limitations on an action brought to collect such a tax); *Lemhi County v. Boise Live Stock Loan Co.,* 47 Idaho 712, 278 P. 214, 217 (Idaho 1929) (holding that "in order that the pendency of other proceedings shall have the effect to toll the statutes of limitations upon a cause of action, the proceedings must be such as to prevent the enforcement of the remedy by action."). Neither the IHRC proceedings against the Club nor the complaint with the Idaho State Bar against Zahn herself would have prevented Kurz from filing a timely complaint for legal malpractice within the statutorily described two-year period. Plaintiff's claim for legal malpractice and negligence stemming from the failure to provide *Upjohn* warnings are therefore subject to dismissal.

### 2. Claims for Libel, Slander, and Defamation

Kurz's remaining claims stem from actions or statements that Zahn allegedly made during the course of a hearing and investigation before the Idaho Human Rights Commission. Kurz claims that Zahn made false statements about her during these proceedings that defamed her character and reputation. Kurz further alleges that she also "committed malpractice by not admitting her unequivocal advice before government authorities." (Dkt 2, p. 3).

The claims for defamation, slander, and libel are also subject to the two-year statute of limitations set forth in I.C. § 5-219. Unfortunately, Plaintiff does not state specifically when in 2009 the complained-of conduct occurred, and the Court therefore cannot determine whether these claims would also be time-barred. However, the Court finds that another basis

exists for dismissing these claims. In Idaho, as in most jurisdictions, statements made during the course of judicial proceedings cannot give rise to civil liability for defamation. In *Weitz v. Green*, 148 Idaho 851, 230 P.3d 743 (2011), the Idaho Supreme Court held:

> [W]ith certain exceptions, unimportant here, defamatory matter published in the due course of a judicial proceeding, having some reasonable relation to the cause, is absolutely privileged and will not support a civil action for defamation although made maliciously and with knowledge of its falsity. If the defamatory statement was made in the course of a proceeding and had a reasonable relation to the cause of action of that proceeding, that statement may not be used as the basis for a civil action for defamation.

148 Idaho at 862, 230 P.3d at 754 (internal citations and quotations omitted). Further, "the term 'judicial proceeding' is not restricted to trials, but includes every proceeding of a judicial nature before a court or official clothed with judicial or quasi judicial power." *Richardson v. Kessler,* 73 Idaho 548, 551-52, 255 P.2d 707, 709 (1953).

The proceedings before the Idaho Human Rights Commission are quasi-judicial proceedings. Libel and slander are simply specific types of defamation claims. Therefore, these claims are all barred under the reasoning of *Weitz* and *Richardson*. The Court also finds that even the claims arising from the IHRC proceedings are characterized as claims for legal malpractice, they would be time-barred pursuant to the discussion in Section B1, supra. Kurz unequivocally points to the September 29, 2008 telephone conversation as Zahn's first negligent act. Shortly thereafter, on October 20, 2008, Kurz was terminated from her employment. Because Idaho does not recognize a theory of "continuing tort," any subsequent acts of negligence do not extend the statute of limitations. Thus, no matter how

the claims arising from the 2009 IHRC proceedings are characterized, they are subject to dismissal.

## RECOMMENDATION

Based upon the foregoing, and the Court being otherwise fully advised in the premises, the Court hereby RECOMMENDS that:

1. Plaintiff's Application for in forma pauperis status (Dkt 1), be DENIED.

2. Plaintiff's Complaint, conditionally filed on July 27, 2011, be DISMISSED.

3. Written objections to this Recommendation must be filed within fourteen (14) days, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

**DATED: April 13, 2012.**

**Honorable Mikel H. Williams**
**United States Magistrate Judge**